IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**STEVEN WAYNE CHAMBLEE, #132423,**          )
                                             )
          Plaintiff,                         )
                                             )
     v.                                      )     CIVIL ACTION NO. 2:04-CV-839-MEF
                                             )
SIDNEY T. WILLIAMS, et al.,                  )
                                             )
          Defendants.                        )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION AND PROCEDURAL HISTORY

Steven Wayne Chamblee ["Chamblee"], a state inmate, filed the complaint in this

42 U.S.C. § 1983 action on September 1, 2004.[1]  The defendants remaining in this cause

of action are Sidney T. Williams, Nancy Conn McCreary and Velinda A. J. Weatherly,

members of the Alabama Board of Pardons and Paroles.  Chamblee complains of adverse

actions related to denials of parole which have occurred "[f]or the last nineteen years . . ."

*Plaintiff's Complaint  - Court Doc. No. 1* at 4.

The parole defendants filed special reports and supporting evidentiary materials

---

[1]1. Although the clerk of this court stamped the complaint "filed" on September 7, 2004, the plaintiff executed the complaint on September 1, 2004.  The law is well settled that a pro se inmate's complaint is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [Chamblee] signed it . . ." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  In light of the foregoing, the court considers September 1, 2004 as the date of filing.

addressing Chamblee's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as a motion for summary judgment.  *See Order of August 17, 2006 - Court Doc. No. 51*.  Thus, this case is now pending on the parole defendants' motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof and Chamblee's response in opposition to the motion, the court concludes that the parole defendants' motion for summary judgment is due to be granted.

## II.  FACTS

In 1985, the Circuit Court of Jefferson County, Alabama imposed a conviction upon Chamblee for first degree rape and sentenced him to ninety-nine (99) years imprisonment.[2] Chamblee has been considered for parole on several occasions during his incarceration but has been denied parole after each parole consideration hearing.  The most recent decisions to deny Chamblee parole occurred in 1996 and on August 9, 2004.  The record demonstrates that all denials of parole occurred because Chamblee failed to persuade members of the parole board that he is an acceptable risk for parole.  *Parole Defendants'*

---

[2] 2.  "The state's evidence disclosed that [Chamblee] and two companions . . . forcibly abducted an 18-year-old female from a public parking lot in Birmingham on January 23, 1981, and for approximately 11 hours brutally assaulted, sodomized, terrorized, and gang-raped her."  *Chamblee v. State*, 527 So.2d 173, 174 (Ala.Cr.App. 1988).

*Exhibits B-D*.

## III.  STANDARD OF REVIEW

To survive the parole defendants' properly supported motion for summary judgment, Chamblee is required to produce some evidence which would be admissible at trial supporting his claims of constitutional violations.  *See* Rule 56(e), *Federal Rules of Civil Procedure*.  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).  Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

3

immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.

1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to

require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary

judgment "must do more than simply show that there is some metaphysical doubt as to the

material facts....  Where the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving part, there is no 'genuine issue for trial.'"  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Consequently, where all the

evidence before the court which is admissible on its face or which can be reduced to

admissible form indicates that there is no genuine issue of material fact and that the party

moving for summary judgment is entitled to it as a matter of law, summary judgment is

proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings,

evidentiary materials and affidavits before the court show there is no genuine issue as to

any material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279

(11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must

produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the

nonmoving party, and pro se complaints are entitled to liberal interpretation by the courts,

a pro se litigant does not escape the burden of establishing a genuine issue of material fact.

4

*Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Chamblee has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## IV.  DISCUSSION

Chamblee asserts that the defendants violated his constitutional rights in denying him parole and scheduling his parole consideration date at a five year set-off.  Specifically, Chamblee complains that the defendants (i) denied him due process, (ii) deprived him of equal protection, (iii) subjected him to cruel and unusual punishment, (iv) relied on false information, and (v) circumvented the Ex Post Facto Clause.  He further complains that *Ala. Code* § 15-22-36 is unconstitutionally vague as it fails to define "immediate family" or "due diligence" and argues that composition of the Alabama Board of Pardons and Paroles is illegal as *Ala. Code* § 15-22-20 prevents members who reside in the same state congressional district from serving on the Board when two of the current members reside in the seventh congressional district.  Under applicable federal law, these claims entitle Chamblee to no relief from this court.

### A.  Claims Barred by the Statute of Limitations

Upon review of the pleadings filed in this case, it is clear that those claims arising

from adverse parole actions or decisions which occurred on or before August 31, 2002 are

barred by the statute of limitations.

> Federal courts must look to state law to determine, first, what
> statute of limitations is applicable, and second, whether that
> limitations period is tolled. *Whitson v. Baker*, 755 F.2d 1406,
> 1409 (11th Cir. 1985). Selection of a limitations period for §
> 1983 actions changed several times [between 1985 and 1989].
> Alabama law, however, provides that the applicable limitations
> period is the one in effect when the claim is filed, not when the
> cause of action arose. *Tyson v. Johns Manville Sales Corp.*,
> 399 So.2d 263, 269-70 (Ala. 1981). It is undisputed that §
> 1983 claims were subject to a two year limitations period at
> that time. *See Jones v. Preuit & Mauldin*, 876 F.2d 1480,
> 1483-84 (11th Cir. 1989) (*Jones II*).

*Dukes v. Smitherman*, 32 F.3d at 537. In Alabama, the general statute of limitations for

personal injury actions is two years. *Ala. Code* § 6-2-38(l). Thus, at the time Chamblee

filed the instant complaint, the applicable statute of limitations for actions brought under

42 U.S.C. § 1983 was two years. *Owens v. Okure*, 488 U.S. 235, 249-250 (1989)(the

proper statute of limitations for § 1983 actions is the forum state's general or residual

statute of limitations for personal injury actions); *see also Lufkin v. McCallum*, 956 F.2d

1104, 1105 (11th Cir. 1992)

Chamblee asserts claims with respect to adverse actions taken against him which

transpired prior to August 31, 2002. On May 17, 1996, the Alabama legislature rescinded

that portion of the tolling provision which previously applied to convicted prisoners. *See

Ala. Code* § 6-2-8(a) (1975, as amended). The tolling provision of *Ala. Code* § 6-2-8(a) is

6

therefore unavailing.  Consequently, the applicable statute of limitations expired on the claims arising from actions which occurred on or before August 31, 2002 on August 31, 2004. Chamblee filed the instant complaint on September 1, 2004.  This filing occurred after the applicable limitations period had lapsed on the aforementioned claims.

Based on the uncontroverted facts of this case, Chamblee has no legal basis on which to proceed with respect to any claims that arose on or before August 31, 2002 as he filed this cause of action more than two years after these alleged violations accrued.  As previously determined, the statutory tolling provision provides no basis for relief.  In light of the foregoing, the court concludes that Chamblee's challenges to actions taken against him on or before August 31, 2002 are barred by the applicable statute of limitations and the defendants are therefore entitled to summary judgment on these claims.

### B.  Due Process - The 2004 Denial of Parole

Chamblee maintains that the defendants deprived him of due process in issuing the decision to deny him parole as such decision arose from "arbitrary and capricious actions . . ." *Plaintiff's Complaint - Court Doc. No. 1* at 11.  Specifically, Chamblee complains that the defendants acted in violation of his due process rights when they (i) failed to provide him a parole consideration hearing on his scheduled date and delayed such hearing without justifiable reason, (ii) failed to act in accordance with laws and regulations

applicable to the determination of parole consideration dates and scheduling of parole hearings, (iii) set-off his parole consideration date for five years based on a regulation enacted after entry of his conviction, (iv) considered protest letters and oral protests without determining the truthfulness of such protests, (v) allowed the placement of information in his parole file without his knowledge, (vi) did not provide him the opportunity to rebut the information on which they relied to deny him parole, (vii) utilized statutes and regulations enacted after his date of conviction in the parole consideration process, (viii) failed to place witnesses under oath, (ix) failed to provide reasons for the denial of parole, (x) failed to interview him prior to his parole hearing, and (xi) failed to allow him the opportunity to personally appear at his parole hearing.  Chamblee's claims arising from an alleged lack of due process in the denial of parole entitle him to no relief.

"The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole . . .  When the statute is framed in discretionary terms there is not a liberty interest created."  *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  This court's exhaustive review of the history of the Alabama parole statute establishes that from its inception the statute has been framed in discretionary terms. The law is well settled that "[t]he mere possibility of parole provides simply 'a hope that

is not protected by due process . . .' *Greenholtz,* 442 U.S. at 11, 12, 96 S.Ct. at 2105, 2106

(1979). . . .  [Moreover], the Alabama parole statute frames the Parole Board's authority

in discretionary terms, and thus does not create for Alabama prisoners a protected liberty

interest in the expectation of parole.  *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)."

*Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

> Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness. *See Brown v. Lundgren,* 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).  In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws.  The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date."

*Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940, 942 (11th Cir. 1982).

Chamblee does not possess a liberty interest in being granted parole that is protected

by the Due Process Clause.  *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991);

*Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489.  Thus, the procedural due

process protections of the Fourteenth Amendment do not apply to either the parole decision

making process, *Thomas*, *supra*, or the determination of parole consideration dates. *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole laws or properly calculate presumptive date of release on parole does not constitute a violation of due process).

Moreover, a delay in holding a parole consideration hearing past the originally scheduled hearing date in violation of the governing administrative regulations likewise does not run afoul of the Constitution. Federal courts no longer ascertain whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion" but must instead look to the nature of the deprivation to determine if a state created a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). As previously noted, an Alabama inmate has no liberty interest in parole protected by the Due Process Clause. Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,]... these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. "Since an inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while

10

awaiting parole consideration] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489. The parole defendants maintain they denied parole to Chamblee because they were not persuaded that Chamblee presented an acceptable risk for release on parole. The decisions of the parole board members with respect to Chamblee demonstrate reasonable and appropriate actions, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988). Chamblee has therefore failed to present any evidence indicating arbitrary or capricious action on the part of the Alabama Board of Pardons and Paroles. Consequently, the motion for summary judgment with respect to each of Chamblee's due process claims should be granted in favor the defendants.

## C. Equal Protection

Chamblee asserts that the parole defendants "denied him equal protection by

[treating him differently] than 'so-called' non-violent offenders." *Plaintiff's Complaint -
Court Doc. No. 1* at 8.  In order to establish a claim cognizable under the Equal Protection
Clause, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners
who received' more favorable treatment; and (2) his discriminatory treatment was based
on some constitutionally protected interest such as race.  *Damiano v. Fla. Parole & Prob.
Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)." *Jones v. Ray*, 279 F.3d 944,
946-947 (11th Cir. 2001).  Moreover, to succeed on an equal protection challenge, the
plaintiff must also demonstrate the existence of discriminatory intent; arbitrary application
of prison rules without discriminatory intent is insufficient to demonstrate a violation of the
Equal Protection Clause.  *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T
Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

> [O]fficial action will not be held unconstitutional solely
> because it results in a . . . disproportionate impact. . . . Proof
> of . . . discriminatory intent or purpose is required to show a
> violation of the Equal Protection Clause.  Discriminatory
> purpose . . . implies more than intent as volition or intent as
> awareness of consequences.  It implies that the decision maker
> . . . selected . . . a particular course of action at least in part
> 'because of,' not merely 'in spite of,' its adverse effects upon an
> identifiable group.

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and
citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case
such as this one, where the plaintiff challenges actions of parole officials, exceptionally
clear proof of discrimination is required.  *Fuller v. Georgia Bd. of Pardons and Paroles*,

851 F.2d 1307, 1310 (11th Cir. 1988).  Evidence which merely indicates disparity of treatment is insufficient to show discriminatory intent.  *McKleskey v. Kemp*, 481 U.S. 279 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the parole defendants, Chamblee bears the burden of producing some evidence to show that the actions of the defendants resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279.  Chamblee concedes that the differential treatment about which he complains occurred due to the violent nature of his offense.  Thus, Chamblee utterly and completely fails to meet his burden as he has offered no evidence identifying any other similarly situated inmate who received more favorable treatment from the defendants, *Brunskill v. Boyd*, 141 Fed.Appx. 771, 776 (11th Cir. 2005), or that the defendants subjected him to adverse treatment based on some constitutionally impermissible reason.  Moreover, even a liberal interpretation of Chamblee's *pro se* complaint does not reveal any factual basis for an equal protection claim.  Furthermore, it is clear from the undisputed evidentiary materials that the defendants refused to grant Chamblee parole based on their determination, after reviewing his record, that he did not warrant release into society.  In light of the foregoing, summary judgment is due to be granted in favor of the defendants on this claim.

**D.  Cruel and Unusual Punishment**

Chamblee contends that he has been denied "[t]he right to be free from cruel and unusual punishment by . . . totally arbitrary and capricious actions [of the] defendants" in denying him release on parole.  *Plaintiff's Complaint - Court Doc. No. 1* at 11.  The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Rhodes v. Chapman*, 452 U.S. 337 (1981).  Only actions which deny an inmate "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment's prohibition against cruel and unusual punishment.  *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991).  The denial of parole fails to rise to the level of an Eighth Amendment violation.  Consequently, the defendants are entitled to summary judgment on this claim.

**E.  False Information**

Chamblee complains that the defendants relied on false information to deny parole. The defendants do not admit that the information utilized in the decision-making process is false and adamantly deny that they knowingly relied on false information.  *Parole Defendants' Exhibits B-D*.  While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) establishes a constitutional claim for the knowing use of false information by parole officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.1982).  In *Slocum*, the Court held that prisoners do not state

a due process claim by merely asserting that erroneous information exists in their prison files.  Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim."  *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001).  Chamblee merely asserts that the defendants based the denial of parole on false information.  This does not state a claim for relief and the defendants are therefore entitled to summary judgment.

### F.  Retroactive Application of Increase in Parole Set-Off Dates

Chamblee contends that the parole board's revised rule requiring that an initial parole consideration date be set upon completion of 85% of a prisoner's total sentence is violative of his constitutional rights.  Chamblee also maintains that the defendants violated his constitutional rights when they retroactively applied applicable administrative rules, which altered the frequency of parole consideration dates from every three years to every five years, in setting his most recent parole consideration date.

**1.  The Initial Consideration Date**.  Chamblee asserts that, at the time the trial court imposed sentence upon him, the rules of the Alabama Board of Pardons and Paroles entitled him to parole consideration after serving ten years (10) or one-third of his sentence. The administrative regulation at issue, which the parole board revised in 2001, extends the date of an initial parole consideration to completion of 85% of a prisoner's sentence or

fifteen years (15) years imprisonment.  *See Alabama Board of Pardons and Paroles Rules, Regulations and Procedures*, Article I, § 7.  However, the revised rule did not affect the scheduling of Chamblee's initial parole consideration, as such consideration indisputably occurred several years prior to enactment of the revision.  Therefore, Chamblee lacks standing to challenge any amendment to the Board's administrative regulations concerning the scheduling of initial parole consideration dates and summary judgment is due to be granted in favor of the defendants with respect to this claim.

       2.  **The Frequency of Reconsideration**.  Chamblee complains that set-off of his parole consideration date for five years upon retroactive application of amended administrative regulations is unconstitutional because prior regulations allowed parole consideration at more frequent intervals.  This allegation implicates the protections guaranteed by the Ex Post Facto Clause and the court therefore construes the claim as one arising under this provision of the Constitution.

       The Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission."  *Garner v. Jones*, 529 U.S. 244, 249 (2000).  An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision.  *Garner,* 529 U.S. at 255.  Decisions with respect to whether a parole regulation violates the Ex Post Facto Clause when applied to inmates entitled to

more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis. *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000). In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment." *Harris*, 217 F.3d at 1350 (quoting *Garner v. Jones,* 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000)); *Jones v. Ray*, 279 F.3d 944, 946 -947 (11th Cir. 2001).

In *Garner*, the Court addressed whether an amended rule increasing parole consideration hearings from every three years to every eight years in Georgia violated the Ex Post Facto Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstance or new information. *Garner*, 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of ex post facto legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Id.* at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory

structure and the board's representations regarding its operations.  *Id.* at 254.  "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience."  *Id.* at 253.

Alabama law gives the Alabama Board of Pardons and Paroles broad discretion in determining whether an inmate should be granted parole, *see* § 15-22-26*, Ala.Code 1975*, "and when and under what conditions" parole will be granted, *see* § 15-22-24(a)*.* Applicable state law also requires that the parole board consider the public interest in every case.  *Ala. Code* § 15-22-26.  This unconditional discretion, however, does not displace the protections of the Ex Post Facto Clause.  *Garner*, 529 U.S. at 253.

The rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles.  In 2001, the parole board adopted the rules and regulations currently in effect.  The board amended these rules and regulations in 2004.  Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*, vests the Board with discretion to determine whether to set the case for reconsideration and, if reconsideration is allowed, "when the case shall next be docketed for consideration, not to exceed five years.[3]  Article 2, § 7, provides that, if the Board "scheduled the next consideration three years or more after denial [of parole]

---

[3].  The initial operating procedure governing the scheduling of parole consideration dates, *Ala. Adm. Code* § 640-X-2.02(8)(1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial."  The increase in the reset date from no "more than three years" from denial of parole to the current five-year maximum originally occurred in adoption of the 2001 rules and regulations.  The parole board retained the five-year set off in its 2004 amendments.

. . ., the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole."[4]   The opportunity for an expedited parole review is likewise available to qualified inmates. Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown and circumstances bearing on his probability to succeed on parole, not merely because the prisoner is following the rules in prison."  Thus, the rule changes are designed to facilitate better exercise of the Board's discretion.  *See Garner*, 529 U.S. at 254-255.

It is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Chamblee nor increase the level of risk that he will serve a longer term of imprisonment.  Specifically, prior to this change, the parole board never guaranteed Chamblee that he would be released before completion of his 99-year sentence.  Additionally, eighteen months after a denial of parole Chamblee has the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for parole and could be scheduled for consideration at an earlier date.  Thus, even if risk of an increased term of incarceration develops in Chamblee's case, he may, upon a showing of "good cause ... and circumstances bearing on his probability to succeed on parole," seek an earlier review before the 5-year interval expires.  *See* Article 2, § 1, *Rules, Regulations and Procedures of the Board of*

---

[4]. The 2001 amendment to the regulation allowed the "earlier scheduling" of consideration twenty-four months, rather than eighteen months, after the denial of parole.

*Pardons and Paroles*.

Chamblee has presented no evidence and the court is unaware of any evidence which demonstrates that the regulations at issue create a significant risk of increased punishment for Chamblee. Moreover, Chamblee possesses the ability to petition the parole board for an earlier parole consideration date. Based on the foregoing, the court concludes that the change about which Chamblee complains did not lengthen his actual term of imprisonment. Thus, Chamblee's challenge to the increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. *Garner*, *supra*. The defendants are therefore entitled to summary judgment on this claim.

### G.  Crime Victims' Rights Act

Chamblee asserts that the defendants improperly utilized the 1996 Crime Victims' Rights Act, *Ala. Code* § 15-23-60 et seq., during the parole consideration process thereby resulting in denial of parole and increased punishment. With respect to this allegation, the court again construes such claim as one arising under the Ex Post Facto Clause which directs that the government may not apply a law retroactively that "inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). Imposition of punishment upon Chamblee under

the Act is an essential element of his ex post facto claim.  Upon review of the Crime Victims' Rights Act, the court concludes that Chamblee's claim is without merit.

The relevant provision of the Crime Victims' Rights Act provides that "[t]he victim . . . may submit a written statement, or recorded oral transcription, which shall be entered into the prisoner's [correctional] records.  The statement shall be considered during any [classification] review for community status of the prisoner or prior to release of the prisoner. . . .   The victim shall have the right to be notified by the Board of Pardons and Paroles and allowed to be present and heard at a hearing when parole or pardon is considered . . ." *Ala. Code* § 15-23-79(a)-(b).  Since initial enactment of the Alabama Code in 1940, the Alabama Board of Pardons and Paroles has been required to notify crime victims of any action to be undertaken by the board.  *Ala. Code* § 15-22-36(e)(1) (1975, as amended), formerly codified at *Ala. Code* § 15-22-36(e)(1)(i) (1940).  Additionally, a victim has always been afforded the right, "at their option, to either appear before the board or give their views in writing." *Ala. Code* § 15-22-36(e)(2)i. (1975, as amended), formerly codified at *Ala. Code* § 15-22-36(e)(2)i. (1940).

The terms of the Crime Victims' Rights Act do not inflict greater punishment nor do they create any risk of increased punishment to Chamblee.  Moreover, the terms of such Act relative to parole merely address rights of victims previously and continuously provided under the provisions of *Ala. Code* § 15-22-36(e)(1).  In light of the foregoing, the court concludes that Chamblee has failed to establish a violation of his constitutional rights

21

with respect to application of the Crime Victims' Rights Act and summary judgment is due to be granted in favor of the defendants on this claim.

### H.  State Statutes

**1.  _Ala.Code_ § 15-22-36 Void for Vaugeness**.  Section 15-22-36 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portions of this statute read as follows:

> Until and unless at least 30 days' written notice of the board's action to be considered has been given by the board to the victim named in the indictment, or if the victim is deceased as a result of the offense, the victim's immediate family, the Board of Pardons and Paroles shall have no power or authority to in any way approve or order any parole . . .  If the victim was a minor at the time of the offense, but has attained majority by the time the notice is sent, the notice shall be directed to the victim.  Provided further, if the victim is deceased as a result of the offense, the notice shall be given to the surviving members of the victim's immediate family, as defined by the operating procedures of the Board of Pardons and Paroles, or in the event there is no immediate family, to a relative of the victim, if any. . . .  The board shall exercise due diligence to locate victims to notify them of hearings.  If all attempts to locate a victim have failed and the agent of the board has certified that due diligence has been exercised, no future attempts shall be required to locate that victim.  At any time the victim may contact the board and request that the board notify the victim of all future hearings.

_Ala. Code_ § 15-22-36(e)(1), (3) and (5).  Chamblee complains that § 15-22-36 "is unconstitutionally vague" as it fails to provide definitions for the terms "'due diligence' .

. . and just who constitute[s] 'the victim's immediate family' . . ." *Plaintiff's Complaint - Court Doc. No. 1* at 15.  This claim is without merit.

"'It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined.'  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1075, 71 L.Ed.2d 152 (1982) (emphasis in the original) (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972)).  Vague enactments offend due process because they do not provide sufficient notice of what is prohibited so that people may guide their behavior accordingly, and because they risk arbitrary application by not furnishing explicit standards for those who enforce them.  *Grayned,* 408 U.S. at 108-09, 92 S.Ct. at 2298- 99." *Woodruff v. United States Dept. of Labor, Office of Workers Compensation Program*, 954 F.2d 634, 642, *rehearing denied*, 961 F.2d 224 (11th Cir. 1992).  The statute challenged by Chamblee does not attempt to prohibit behavior or identify unlawful conduct but merely sets forth the manner in which the parole board may provide notice to the victim or the victim's immediate family of the action to be considered by the parole board.  Consequently, this statute cannot be attacked for vagueness.  *Id.*

"Even if the void-for-vagueness doctrine could be applied to [notice requirements which do] not purport to control behavior in any way, [the challenged code section] is not vague.  A rule that does not reach constitutionally protected conduct is void for vagueness only if it is impermissibly vague in all its applications.  *Hoffman Estates v. Flipside,*

*Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). The test is whether the enactment is substantially incomprehensible. *Exxon Corp. v. Busbee,* 644 F.2d 1030, 1033 (5th Cir. May 1981), *cert. den.*, *Exxon Corp. v. Georgia Assn. of Petroleum Retailers*, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981)." *Woodruff*, 954 F.2d at 643. The words "immediate family" and "due diligence" adequately identify the persons to be notified and the manner in which the parole board should act in its attempt to locate victims to provide them notice pursuant to the requirements of the notification provisions. These words "provide explicit standards for those who apply them" and "give the person of ordinary intelligence a reasonable opportunity to know what is [required]." *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298-2299.

    **2. *Ala.Code* § 15-22-20(a) - Composition of Parole Board.** Chamblee complains that defendants Williams and Weatherly reside in the same congressional district in violation of the provisions of *Ala. Code* § 15-22-20(a). On September 23, 2003, prior to the initiation of this complaint and before Chamblee's most recent parole consideration in August of 2004, the only action timely challenged in the instant complaint, the Alabama legislature rescinded that portion of § 15-22-20(a) which directed that "no two members of such board shall be residents of the same congressional district." *Ala. Code* § 15-22-20(a) (1975, as amended). Thus, since adoption of this amendment, the code section has merely directed that "[t]here shall be a Board of Pardons and Paroles which shall consist of three members." Chamblee's claim that the presence of Williams and Weatherly as

board members violates state law is refuted by the express terms of the statute.  Moreover, even had members from the same congressional district served on the parole board prior to the amendment, such action fails to implicate the Constitution.

## I.  State Law Claims

To the extent Chamblee attempts to assert claims that the actions of the defendants violated state law, review of these claims is appropriate only upon exertion of this court's supplemental jurisdiction.  In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'"  *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."  *L.A. Draper and Son*, 735 F.2d at 428.  In view of this court's resolution of the federal claims presented in the complaint, Chamblee's pendent state claims are due to be dismissed.  *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677

F.2d 818 (11th Cir. 1982).

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The parole defendants' motion for summary judgment be granted.

2.  Judgment be GRANTED in favor of the parole defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before September 21, 2006 the parties may file objections to the Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d

33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 6th day of September, 2006.


/s/ Vanzetta Penn McPherson
UNITED STATES MAGISTRATE JUDGE